UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Civil Action No._____

CHRISTOPHER B JACKSON

111 S 111TH PL

Mesa, Arizona 85208,

                    Plaintiff.

vs.

JOHN C. PHELAN

Secretary of the Navy

The Pentagon

Washington, DC 20350-1000

                    Defendant.

_____/

## INTRODUCTION.

The Secretary of the Navy discharged Christopher Jackson from the Marine Corps after

he had served for approximately 18 years. Mr. Jackson received excellent performance appraisals

and commendations during his service and was promoted on time. Minor disciplinary issues

were resolved with administrative punishment or remarks in his service record. Mr. Jackson

contracted for a 4-year reenlistment on September 17, 2019. Completing the 2019 contract would

have allowed him to retire with over 20 years of service in the Marine Corps. As set out below,

the Department of the Navy violated its regulations during the separation process. When the

violations were identified pre-discharge and corrections were made, the Secretary of the Navy

refused to reconsider his decision. Mr. Jackson sought redress via the Board for Correction of

Naval Records in September 2021. In June 2022, the Board granted partial relief to Mr. Jackson without deciding the remaining issues that should have been favorably dispositive. However, based on the violation of regulations during the separation process, the Board directed a correct version of Mr. Jackson's separation package, this time complying with Department of the Navy regulations, be resubmitted to the Secretary of the Navy to determine if his decision would have been different.[1] The actions directed by the Board were ignored, or the Secretary again refused to consider Mr. Jackson's separation package complying with Department of the Navy regulations. In April 2024, communications were cut off by the Department of the Navy; hence, this complaint was filed.

## COMPLAINT.

### (APA Review of Decision of the Secretary of the Navy, Violation of Federal Regulation, Constitutional Violation.)

### JURISDICTION.

1. The Court has jurisdiction under 28 U.S.C. § 1331. The Plaintiff raises claims under the United States Constitution, federal statutes, and/or military regulations.

2. The Act of Congress upon which federal question jurisdiction rests is 10 U.S.C. § 1552, which provides for a service member to apply to the Secretary of the Navy acting through the Board for Correction of Naval Records to correct errors and injustices, and the Administrative Procedure Act, 5 U.S.C. § 701 et seq., which permits a federal court to review and reverse the decision of the Secretary of the Navy or the Board for Correction of Naval Records that is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise contrary to law.

---

[1] The partial relief without ruling on the remaining issues was because if the partial relief resulted in a reversal of the Secretary's decision-making, the remaining issues would be mooted.

## PARTIES.

3.  The Plaintiff is a United States citizen who served on active duty in the United States Marine

    Corps from 2002 through 2021.

4.  The Plaintiff resides at the address stated in the caption.

5.  The Defendant is the (Acting) Secretary of the Navy. He is the head of the Navy. 10 U.S.C.

    §5013.

## STATUTE OF LIMITATIONS AND
## EXHAUSTION OF ADMINISTRATIVE REMEDIES.

6.  The Plaintiff was discharged from the USMC effective May 31, 2021.

7.  On September 21, 2021, the Plaintiff applied to the Board for Correction of Naval Records to

    correct records relating to his proceedings before an administrative separation board and his

    subsequent discharge.

8.  On June 14, 2022, the Board for Correction of Naval Records issued a final decision

    essentially *granting in part the* Plaintiff's application, reserving the remaining issues.

9.  On April 29, 2024, the Department of the Navy ceased communicating with the Plaintiff.[2]

10. The Plaintiff has exhausted all administrative remedies available to him.

11. 28 U.S.C. § 2401 requires filing a claim before this court within six years after such claim

    first accrues.

12. The Plaintiff's claim first accrued on April 29, 2024, when the Department of the Navy

    ceased action on the directive from the Board for Correction of Naval Records.

---

[2] The United States Marine Corps Judge Advocate Division serves to advise the Commandant of the Marine Corps (CMC) and other officials in Headquarters, Marine Corps, e.g., the Deputy Commandant of the Marine Corps for Manpower and Reserve Affairs, on legal matters.

13. As this Complaint is filed within six years of the date of his separation, it is timely filed on all issues.

## STATEMENT OF FACTS.

### The Plaintiff's Military Service Before the Incidents in Question.

14. The Plaintiff enlisted in the USMC on June 10, 2002.

15. From June 10, 2002, through his discharge date, the Plaintiff served as an Air Traffic Controller and Senior Air Traffic Controller. He also served a successful tour as a Marine Corps Recruiter.

16. Between June 10, 2002, and May 31, 2021, the Plaintiff was recognized with the following awards and decorations: National Defense Service Medal, Iraq Campaign Medal, Navy Unit Commendation (x2), Navy Meritorious Unit Commendation, NATO Medal, ISAF Afghanistan, Global War on Terrorism Expeditionary Medal, Marine Corps Recruiting Ribbon, Sea Service Deployment Ribbon (x5), Navy and Marine Corps Achievement Medal, Marine Corps Good Conduct Medal (x5), Global War on Terrorism Service Medal, Afghanistan Campaign Medal.[3]

17. To the point of being notified of administrative separation processing, the Plaintiff was consistently promoted and received excellent performance appraisals (fitness reports).[4]

18. On May 6, 2020, after serving nearly 18 years, the Plaintiff was notified he was being processed for involuntary administrative separation in accordance with Marine Corps Order 1900.16.

---

[3] ISAF: The International Security Assistance Force (ISAF) was a multinational military mission in Afghanistan from 2001 to 2014

[4]. The Plaintiff has one Nonjudicial Punishment (administrative) in his record for a minor disciplinary infraction; however, he was allowed to reenlist and continue service after being punished.

**The Alleged Incidents in Question.**

19. In August 2018, the Plaintiff's divorce from his wife, Jillian Jackson, was finalized.

20. In September 2018, the Plaintiff was notified that his ex-wife had gone to his command, accusing him of adultery. Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. The Plaintiff was also informed of an investigation into the accusations.

21. On September 13, 2018, a preliminary inquiry under Manual for Courts-Martial Rules for Court-Martial 303 and Manual of the Judge Advocate General of the Navy § 0203 was completed based on the allegations of the Plaintiff's ex-wife, and a more extensive command investigation was recommended.[5]

22. Based on the same allegations, a command investigation under the Manual of the Judge Advocate General of the Navy § 0209 was initiated on September 17, 2018, and completed on November 8, 2018.

23. Endorsements to the command investigation were signed on December 4, 2018, by the Plaintiff's Squadron Commanding Officer and on January 31, 2019, by the Plaintiff's Group Commanding Officer. Both Commanding Officers recommended prosecuting the Plaintiff at a Special Court-Martial for various offenses. That never happened.

24. The Plaintiff's Squadron Commanding Officer and Group Commanding Officer are both Special Courts-Martial Convening Authorities and could have charged the Plaintiff if desired.

---

[5] JAGINST 5800.7G: A preliminary inquiry serves as an analytical tool to help a CO determine whether an investigation is warranted and, if so, how it should be conducted. A preliminary inquiry is not intended to develop extensive findings of fact. COs should discuss the findings and recommendations of the preliminary inquiry with a judge advocate to determine the appropriate option detailed in section 0204 of the Manual.

25. Based on information and belief, the Commanding General of the 3rd Marine Aircraft Wing never endorsed the command investigation, as required. Manual of the Judge Advocate General of the Navy § 0209.g(1).

**Reenlistment**

26. On September 27, 2019, ***after the investigation was completed and endorsed and approximately nine months had passed, the Plaintiff re-enlisted in the USMC*** for the last time. The Plaintiff's new contract gave him enough time to accumulate sufficient service to retire from active duty.

**Administrative Separation Board Proceedings**

27. On April 1, 2020, ***17 months after the investigation was completed and during a new period of enlistment,*** the Plaintiff was notified by his Squadron Commanding Officer that he was being processed for administrative separation for the specific allegations that on or about April 20, 2018, Plaintiff violated Article 120c of the UCMJ by secretly placing a video recording device on the window sill of [his ex-wife's] bedroom, with the intent to make recordings of her private areas in various states of undress and nudity, without her consent and under circumstances in which she had a reasonable expectation of privacy.

28. On April 7, 2020, Petitioner was issued an Administrative Remarks counseling for violating Articles 92, 107, 120c, and 134, UCMJ, for (1) the solicitation and distribution of inappropriate photos from his government e-mail address, (2) creating and signing false divorce records with intent to deceive, (3) secretly placing a video recording device on the windowsill of his spouse's bedroom without her consent, and (4) prior to the dissolution of his marriage, his involvement in an extramarital relationship with a woman, not his wife.

29. On April 7, 2020, the Plaintiff acknowledged the counseling and elected to submit a response

statement.  In Plaintiff's response, he wrote:

> There has been no evidence presented to me in regards [sic] to these
> allegations. Therefore, I cannot make a factual statement in regards
> [sic] to these accusations without such information.
>
> Given this is a 6105 that I have no ability to oppose other than
> through this rebuttal, I will continue to assert my innocence in this
> matter. However, I do intend to exercise my right to a hearing before
> a [sic] Administrative Separation Board should one occur.[6]

30. On April 21, 2020, the Plaintiff's Squadron Commanding Officer sent a Request for Legal

Services to the Legal Services Support Team aboard Marine Corps Air Station Miramar to

initiate the legal processing of the Plaintiff for administrative separation.

31. On May 6, 2020, the Plaintiff was notified anew that he was being processed for

administrative separation for specific allegations that:

   a. Between October 2010 and March 2013, Plaintiff violated DOD 5500.07-R (Joint

   Ethics Regulations) by soliciting and distributing inappropriate photos from

   Plaintiff's government email address, violating Article 92, UCMJ.

   b. On or about 7 November 2016, Plaintiff, with intent to deceive, created and

   signed false divorce records, which were totally false, and were then known by

   Plaintiff to be so false, in violation of Article 107, UCMJ.

   c. On or about 20 April 2018, Plaintiff violated Article 120c of the UCMJ by

   secretly placing a video recording device on the windowsill of J.J.'s bedroom,

   with the intent to make recordings of her private areas in various states of undress

---

[6] 6105 refers to Marine Corps Order 1900,16, ¶ 6105.

and nudity, without her consent and under circumstances in which she had a

reasonable expectation of privacy in violation of Article 120c, UCMJ.

    d.  Before the dissolution of Plaintiff's marriage, Plaintiff committed indecent

conduct, to wit, conducting an extramarital relationship with a woman who was

not Plaintiff's wife, including engagement to be married, and that said conduct

was of a nature to bring discredit upon the armed forces, in violation of Article

134, UCMJ.

32. All the conduct was alleged to have occurred in a prior enlistment period, i.e., before he

reenlisted on September 17, 2019, and his command knew of the alleged conduct.

33. On June 29, 2020, the Plaintiff was the subject of an administrative separation board (ASB)

under Marine Corps Order 1900.16, ¶ 6316.

34. During closing arguments, Plaintiff's counsel iterated and reiterated at least four times that

Plaintiff reenlisted after the allegations were made and investigated.

35. On June 29, 2020, the three ASB members (jury) returned findings that there was sufficient

evidence to substantiate by a preponderance of the evidence that the Plaintiff violated Article

120c as set out in the notification. (¶ 31c, *supra*). The Plaintiff was acquitted of the other

allegations. Even though the ASB members substantiated one misconduct allegation, they

unanimously recommended the Plaintiff's retention in the USMC.

36. Because of the retention recommendation, the members made no recommendation for

discharge characterization of service. Marine Corps Order 1900.16, ¶ 6319.

37. The findings worksheet used to report the ASB's verdict was in letter format addressed from

the senior member (foreperson) to the convening authority of the ASB. The subject line

indicated the document was the *Report of the Board*.  The four enclosures to the *Report of the*

*Board* were (1) the *Record of Board Hearing* (hereinafter *Record of Proceedings*), (2) a minority report, if any (there was none), (3) Government Exhibits, and (4) Respondent Exhibits.[7] Note: *No Record of Proceedings* was available when the ASB adjourned because it had not been created when the ASB adjourned.

### Post-ASB, Pre-Discharge Actions

38. After the ASB adjourned, the Plaintiff continued to serve as a senior air traffic controller in a leadership position and was subsequently deployed on a remote exercise as the senior Marine in charge.

39. Unbeknownst to the Plaintiff, on July 13, 2020, his Squadron Commanding Officer forwarded the *Report of the Board* without the required *Record of Proceedings* to the Commanding General, via the Group Commanding Officer, recommending that the Plaintiff be separated, despite the ASB's recommendation for retention, due to loss of trust and confidence in judgment and trustworthiness of the Plaintiff. See Marine Corps Order 1900.16 w/Ch2, ¶ 6320.

40. Plaintiff's Squadron Commanding Officer cited the following for support of the *post-ASB* recommendation:

   a. The plaintiff's service has been marred by his conduct in the last few years. *She did not identify the conduct.*

   b. The improper relationships with other women while he was married.[8]

   c. The unauthorized recording of his ex-wife's private home areas.[9]

---

[7] The Record of the Board logically refers to the Record of Proceedings required by Marine Corps Order 1900.16 w/ Ch2 ¶ 6320; App. L 29-31.

[8] The Plaintiff was acquitted of this allegation.

[9] The Plaintiff contested this allegation, but it was substantiated by a preponderance of the evidence.

    d.  The false divorce records.[10]

41. The Squadron Commanding Officer further reported that the Plaintiff submitted no statement. If the Squadron Commanding Officer reports that the plaintiff did not submit a statement to her endorsement, he was never given the opportunity. However, if the Squadron Commanding Officer reports that the Plaintiff did not respond to the Administrative Remarks counseling, that is incorrect. See ¶ 29, *supra*.

42. Unbeknownst to the Plaintiff, the Group Commanding Officer signed a second endorsement on July 17, 2020.

43. Unbeknownst to the Plaintiff, on September 22, 2020, the Commanding General signed a third endorsement that approved the ASB's findings from July 29, 2020, [sic] but disapproved the recommendation for retention. The Commanding General then forwarded the ASB Report to the Secretary of the Navy via the Commandant of the Marine Corps (Manpower & Reserve Affairs) without the *Record of Proceedings* required. MCO 1900.16, ¶ 6320. He recommended that the Plaintiff be separated from the USMC with a general (under honorable conditions) characterization of service.

44. On February 2, 2021, the Plaintiff was blindsided by a colleague who told him (informally) that the Assistant Secretary of the Navy (Manpower and Reserve Affairs) had signed paperwork to separate the Plaintiff from the USMC with a General Discharge for the commission of a serious offense.

45. On February 3, 2021, the Plaintiff received a copy of the separation directive.[11] The letter reported that the Assistant Secretary of the Navy (Manpower and Reserve Affairs) reviewed

---

[10] The Plaintiff was acquitted of this allegation.
[11] Letter from CMC(MRA-MMSR-2) to CG, 3RDMAW (February 1, 2021).

the cited endorsements and the ASB recommendations. The letter further noted that the Assistant Secretary directed the Plaintiff's discharge from the USMC with a general (under honorable conditions) citing Secretarial Authority (commission of a serious offense) as the reason for separation.[12]

46. On February 3, 2021, at 1032 am, the Plaintiff's military counsel requested a copy of the *Record of Proceedings* from the Administrative Law Chief at the Marine Corps Air Station Miramar Legal Services Support Team by email.

47. On February 4, 2021, at 8:44 am, the Administrative Law Chief responded they "do not produce *summarized transcripts* when a Board finds no basis or finds basis and recommends retention."[13]

48. The mandatory requirements for a *Record of Proceeding* are in MCO 1900.16, ¶ 6320.1.

49. On February 4, 2021, at 9:28 am, the Plaintiff's military counsel requested and received by email the digital audio recording of the June 29, 2020 proceedings from the Administrative Law Chief, Marine Corps Air Station Miramar, Legal Services Support Team. The Plaintiff's counsel sent them to be transcribed.

50. On February 9, 2021, the Plaintiff, through counsel, filed a request for reprocessing and reconsideration of his post-ASB processing, alleging violations of the Plaintiff's due process rights, violations of regulations, insufficiency of proof, and an incomplete *Record of Proceedings* upon which the decision was made.  The request was sent to the Staff Judge

---

[12] Note: there was no correspondence from the Assistant Secretary of the Navy (Manpower and Reserve Affairs) provided to Plaintiff. According to Mr. Patrick Foreman at CMC(MRA-MMSR-2E), his office has maintained a copy.

[13] For all intents and purposes, the *Record of Proceedings* is a transcript of the separation board.

Advocate (legal advisor) to the Commanding General and Mr. Foreman, the point of contact at Headquarters, U.S. Marine Corps (MMSR-2).

51. On February 18, 2021, the Plaintiff's Squadron Commanding Officer wrote to the Plaintiff stating that Headquarters, U.S. Marine Corps (MMSR-2) rescinded the discharge letter and gave a thirty-day extension until March 17, 2021, to file the Plaintiff's position. Additionally, the Plaintiff was informed that if retention is determined, his old end of active service date of September 16, 2023, would be reinstated. If separation is determined, a new separation letter will be sent.

52. On February 19, 2021, the Marine Corps Air Station Miramar administrative law section verbally informed Plaintiff's military lawyer that the ASB transcript (*Record of Proceedings)* was not completed but that a copy would be forwarded to Plaintiff's counsel upon completion.

53. On March 3, 2021, the Staff Judge Advocate to the Commanding General emailed Plaintiff's counsel: "Thank you for identifying the administrative oversight in not including the Summarized Transcript with the *Record of Proceedings* and Report of the Board ICO [Gunnery Sergeant] Jackson."

54. Attached to the March 3, 2021 email was a letter dated February 11, 2021, from the Commanding General with one enclosure, purported to be a Summarized Transcript dated February 11, 2021, stating the Commanding General reviewed the enclosed summarized transcript and that his recommendation remains the same. The Staff Judge Advocate also

confirmed the letter was sent to Headquarters, U.S. Marine Corps (MMSR-2) on February 11, 2021.[14]

55. On March 4, 2021, at 1008 am, the Administrative Law Chief at the Marine Corps Air Station Miramar Legal Services Support Team sent a summarized transcript of the ASB and the following: "As discussed, we only have an unofficial transcript. The attached was reviewed by me as the *assistant recorder*; however, it was *never authenticated by the senior member* because we had no requirement to produce a transcript due to the Board's recommendations."  (emphasis added).

56. The *Record of Proceedings* must be authenticated by the signatures of the President (foreperson) and the **Recorder (government representative)** or, in the absence of either or both, by a member in lieu of the President or by a member in lieu of the recorder. Marine Corps Order 1900.16, ¶ 6320.

<u>The Recorder</u>

57. The convening authority must appoint the recorder for an ASB. MCO 1900.16 ¶6315.3. The convening authority *may* appoint an assistant recorder for an ASB. *Id.* The convening authority may delegate the authority to appoint the recorder or assistant recorder to (1) the cognizant staff judge advocate, (2) the legal services support section officer-in-charge, or (3) the law center director. Marine Corps Order 1900.16, ¶ 6315.3. The recorder and assistant recorder should be experienced officers and **shall be** a warrant or commissioned officer. *Id.* at ¶ 6315.a.

---

[14] Note that on February 19, 2021, the Administrative Law Section verbally informed Plaintiff's military counsel that the transcript was not yet completed.

    a.   Staff Noncommissioned Officers (like the Assistant Recorder in Plaintiff's ASB) may be appointed to act as recorder **upon approval by the convening authority's cognizant Staff Judge Advocate**. *Id.*[15]

58.  The convening authority did not personally appoint anyone to the ASB except the members. Instead, the convening authority authorized the appointment of "a recorder" and delegated the appointing authority to the Legal Services Support Section, Officer in Charge.[16]

    a.   The Legal Services Support Section-West is at Camp Pendleton, California, and provides legal services for the Fleet Marine Force on the West Coast through **subordinate** Legal Services Support Teams. A Marine Colonel leads the Legal Services Support Section-West.

    b.   One of those subordinate Teams is located at Marine Corps Air Station Miramar. MCO 5800.16 w/ Change Transmittal 7.

59. The Legal Services Support Section Officer in Charge cannot delegate further detailing authority to the Legal Services Support Team in MCO 1900.16, and the Legal Services Support Section, Officer in Charge, did not appoint the Recorder or Assistant Recorder.

60. The cognizant staff judge advocate for the Plaintiff's convening authority (Squadron Commanding Officer) is the Staff Judge Advocate for 3D Marine Aircraft Wing.

---

[15] This approval ensures that if a Staff Noncommissioned Officer is appointed, they possess the competency and maturity to fulfill the role of recorder. It is separate from appointing a Staff Noncommissioned Officer to serve the role.

[16] Letter from Commanding Officer, MACS-1, to Major Jared Dalton (May 20, 2020) (contained in Report of the Board). The convening further authorized the appointment of a military defense attorney to serve as military counsel for the respondent and delegated that authority to the Senior Defense Counsel, Legal Services Support Section, which didn't happen. Instead, the Senior Defense Counsel for Legal Service Support Team Miramar detailed the military counsel. The convening authority also delegated detailing a legal advisor to the Legal Services Support Section Officer in Charge.

      a.   There was no delegation of authority to the Staff Judge Advocate in the appointing order.

61. To appear as a recorder for an ASB where sexual misconduct is alleged (as it was here), the recorder and/or the assistant recorder must be a certified judge advocate within the meaning of the Manual for Courts- Article 27(b), UCMJ. If available, the recorder/assistant recorder should be Special Victim Investigations and Prosecutions qualified. *Id*. at ¶ 6315.3.a.

62. The Administrative Law Chief at the Marine Corps Air Station Miramar Legal Services Support Team appeared as assistant recorder, prepared the *Record of Proceedings*, and signed the *Record of Proceedings* as the recorder.

      a.   Regarding the Administrative Law Chief at the Marine Corps Air Station Miramar Legal Services Support Team:

            i.   Neither the convening authority nor the Legal Services Support Section Officer-in-Charge appointed the Administrative Law Chief as the Assistant Recorder.

           ii.   The Administrative Law Chief was not and is not a certified judge advocate in accordance with Article 27(b), UCMJ, or Special Victim Investigations and Prosecutions qualified.

63. The *Record of Proceedings* sent by the Administrative Law Chief to the Plaintiff's counsel was not signed by the President of the ASB or any other member and was undated.

64. On March 10, 2021, Plaintiff paid out of pocket for a transcription of the ASB hearing.

65. On March 17, 2021, the Plaintiff's Squadron Commanding Officer requested that the Plaintiff's end of service be extended another 30 days to April 17, 2021.

66. On March 18, 2021, the Plaintiff's Squadron Commanding Officer sent a letter to the Plaintiff informing him that his end of service was moved back to September 16, 2023, pending review.

67. On March 25, 2021, the Plaintiff submitted a rebuttal to the Plaintiff's separation (including the personally procured transcript) to Headquarters, U.S. Marine Corps (MMSR-2), and the package's receipt was verified by email.

68. On March 26, 2021, the Staff Judge Advocate wrote to the Plaintiff's counsel, stating that Headquarters, U.S. Marine Corps (MMSR-2) requested that the 3D Marine Corps Aircraft Wing correct a typographical error in the letter dated February 11, 2021. The revised letter, dated March 25, 2021, was attached to the email.

    a. Also attached was a version of the *Record of Proceedings*, in which the date the President's signature was affixed to the document was typed in after the fact.[17]

69. In early May 2021, the Assistant Secretary of the Navy (Manpower and Reserve Affairs) refused to review the package with the required documentation resubmitted by the Commanding General and Headquarters, U.S. Marine Corps.[18]

70. On May 11, 2021, the Plaintiff discovered almost accidentally that the Assistant Secretary of the Navy (Manpower and Reserve Affairs) had again executed a document ordering the Plaintiff's discharge on May 5, 2021.

---

[17] On October 2-3, 2024, Plaintiff's counsel verified with the President of the Board that he received the *Record of Proceedings* by email around February 11, 2021. He printed, signed, scanned, and emailed it back to whoever emailed it to him. He doesn't have any of the emails but does have the scanned document. Some unknown person typed the date onto the document after he emailed.

[18] Letter from Chairman, Board for Correction of Naval Records to Secretary of the Navy (June 14, 2022) (on file with BCNR at SEA Docket NO: 6385-21 6/14/2022).

71. On 31 May 2021, the Plaintiff was discharged from the Marine Corps with a General (Under Honorable Conditions) character of service based on Secretarial Authority.

## Post Discharge Actions

72. On September 18, 2021, the Plaintiff petitioned the Board for Correction of Naval Records to correct his record by awarding him constructive service to his original retirement. Alternatively, the Plaintiff requested eligibility for the Terminal Early Retirement Authority (TERA) Program effective May 31, 2021.  The Plaintiff also requested that his character of service be changed to Honorable.

73. The basis for the correction and as understood by the Board for Correction of Naval Records was: (1) [Plaintiff] was accused of committing a serious offense but was not charged for any violation under the UCMJ; (2) the handling of his case was unprofessional, errors were found and committed by the Marine Corps and his chain of command; (3) during the Administrative Separation Board he was represented by civilian counsel and the board unanimously voted to retain him, however, his chain of command negatively endorsed his package, included false information, and as a result, the Assistant Secretary of the Navy (Manpower and Reserve Affairs) approved his separation; (4) the Marine Corps agreed to review his case, but there were no changes; (5) the separation package does not specify why his case is essential to the interest of good order, discipline, or the proper administration of justice; (6) the chain of command's statements that they lost trust and confidence in him is undermined by his command continuing to give him leadership opportunities and billets; and (7) the separation violated paragraphs 6309.2 and 6320 of MCO 1900.19 because the Commanding General, 3D Marine Aircraft Wing did not indicate that he reviewed the record, and the Marine Corps did not include a transcript of the ASB proceeding. *See* Letter from

Chairman, Board for Correction of Naval Records to Secretary of the Navy (June 14, 2022)

(on file with BCNR at SEA Docket NO: 6385-21 6/14/2022).

74. After receiving his petition and assigning the petition Docket Number NR20210006386,

BCNR requested an advisory opinion from the Staff Judge Advocate to the Commandant of

the Marine Corps (SJA-JPL).[19]

75. On February 15, 2022, the Commandant of the Marine Corps (SJA-JPL) issued an advisory

legal opinion relevant to this part of the complaint that opined [Plaintiff] accurately notes that

MCO 1900.16 requires the Marine Corps forward a summarized transcript of his

administrative separation proceeding as part of the separation package. This procedural error

should be corrected by directing the Marine Corps forward the separation package with the

transcript to the Assistant Secretary of the Navy (Manpower and Reserve Affairs) for his

review. As the separation authority in this case, the Assistant Secretary of the Navy

(Manpower and Reserve Affairs) can determine whether the transcript materially impacts his

decision.

76. On June 14, 2022, the BCNR issued a decisional document finding an injustice warranting

partial corrective action. The board held:

---

[19] MCO 5800.16 with Change Transmittal 7, para 010304 defines JPL's responsibility. JPL advises the SJA to CMC, HQMC staff agencies, and the Marine Corps legal community on the full range of military personnel law matters affecting the Active and Reserve Marine components to ensure the provision of timely, efficient, consistent, and appropriate legal advice and support from the SJA to CMC to Deputy Commandant for Manpower and Reserve Affairs (DC M&RA), CMC, and SECNAV. JPL duties include reviewing officer misconduct and substandard performance cases, reviewing selection board precepts and guidance, screening results of selection boards and monthly promotion MARADMINs, processing adverse officer promotion packages, and reviewing enlisted administrative separation packages for cases requiring approval by DC M&RA or SECNAV. In addition, on behalf of the SJA to CMC, JPL provides advisory opinions to the Performance Evaluation Review Board (PERB) and the Board for Correction of Naval Records.

a. Plaintiff's request for constructive service and to change his character of service to Honorable *was not yet ripe*, pending a review of the complete [Administrative Separation Board] transcript by Assistant Secretary of the Navy (Manpower and Reserve Affairs). (emphasis added).

b. In consideration of Petitioner's contentions, the volume of evidence, and Advisory Opinion recommendation, the Board determined that the Marine Corps committed a procedural error that may have affected the Assistant Secretary of the Navy (Manpower and Reserve Affairs)'s decision regarding Petitioner's separation. While not conceding that Petitioner's involuntary separation was in error, the Board did, however, determine that procedural errors regarding the lack of [Administrative Separation Board] transcripts when Assistant Secretary of the Navy (Manpower and Reserve Affairs) reviewed the separation package may have had a material impact on the decision to separate Petitioner and assigned him a General (Under Honorable Conditions) character of service.

77. The Board thus concluded that the Petitioner's complete separation package ***shall be assembled and forwarded by the Marine Corps,*** in compliance with reference (b), to the Assistant Secretary of the Navy (Manpower and Reserve Affairs) for review and determination if the Petitioner's involuntary separation and assigned characterization of service should be modified. (emphasis added).

**Post BCNR Action and Inaction**

78. For reasons unknown, the decisional document did not find its way from BCNR to Plaintiff or Plaintiff's counsel until Plaintiff contacted BCNR in December 2022 and was provided a copy.

79. Over the next few months, the plaintiff repeatedly contacted the Deputy Commandant of the Marine Corps (Manpower and Reserve Affairs) but received no response.

80. The Plaintiff again contacted the Board for Correction of Naval Records by email on April 24, 2023, to get an update and received the following in a reply:

> Thank you for contacting the Board for Correction of Naval Records (BCNR). Per your request, the BCNR refers you to the [DC(M&RA)] for a status of the Board's direction which is contained in your decisional documents.

81. This information led the Plaintiff to re-engage his counsel to inquire into the Deputy Commandant of the Marine Corps (Manpower and Reserve Affairs) and Commandant of the Marine Corps (SJA-JPL) to get updates on the resubmission to the Assistant Secretary of the Navy (Manpower and Reserve Affairs) as directed by Board for Correction of Naval Records and approved by the designated representative of the Secretary of the Navy on June 14, 2022.

82. The Plaintiff's counsel made phone and email inquiries to the Deputy Commandant of the Marine Corps (Manpower and Reserve Affairs) (MMRP-20) at 703-784-5640/3906 and smb.manpower.mmrp-20@usmc.mil.

83. The Plaintiff's counsel made phone inquiries on May 4, 2023, contacting a Major Queen who said she would conduct an inquiry and call back.

84. On May 5, 2023, the Plaintiff's counsel received an email communication from Ms. Sonya Jackson, Deputy Commandant of the Marine Corps (Manpower and Reserve Affairs) (MMRP-13), Performance Evaluation Review/Conressionals [sic], Modification Records Correspondence Unit, who said she would follow up on the conversation she had that afternoon regarding [Plaintiff] with [Plaintiff's counsel] and would follow-up with Plaintiff's counsel the following Monday, after discussing it more with her supervisor.

85. On May 12, 2023, the Plaintiff's counsel initiated a call to Ms. Jackson because there was no callback on Monday, May 8, 2023.

86. On May 15, 2023, Ms. Jackson emailed and apologized for the delay and was trying to follow up the same day.  That same day, Ms. Jackson sent a 1-page document dated September 19, 2022, from SES Michael Strobl to Assistant Secretary of the Navy (Manpower and Reserve Affairs) with the subject: Readdress request for Administrative Separation of Mr. Christopher B. Jackson (formerly Gunnery Sergeant) xxxxxxxxxx/729l USMC.  That document, *inter alia*, recommended ASN(M&RA) uphold the previously approved decision to discharge [the Plaintiff] based upon "Commission of a Serious Offense" with a General (Under Honorable Conditions) characterization of service without suspension.

87. Reading the Strobel letter, it appears that it should be more than one page; however, on May 15, 2023, Ms. Jackson confirmed that it was, in fact, one page and that this case is pending the requested notes regarding the decision. There was no further context provided.

88. Plaintiff's counsel asked for further context, and on May 16, 2023, Ms. Jackson responded that "[t]he pending notes comment… I requested more information regarding the memo I shared. I am hopeful a response might advise the way forward on this case. If there is nothing else provided, *BCNR **would have to direct the way forward- if any.*** (emphasis added).

   a. Note – the Deputy Commandant of the Marine Corps (Manpower and Reserve Affairs) (MMRP) had a copy of the June 14, 2022, BCNR Decisional memo and, therefore, had the way forward. They were supposed to resubmit the entire package to the Assistant Secretary of the Navy (Manpower and Reserve Affairs) to determine if the transcript affected the Assistant Secretary's decision-making.

89. On July 28, 2023, the Plaintiff reached out for a status update, but it went unanswered.

90. On March 4, 2024, Plaintiff reached out for a status update by phone (5 different phone numbers) and email (4 different email inboxes, including organization email addresses and Ms. Jackson's email address), but the request went unanswered.

91. On March 5, 2024, Plaintiff spoke to Taylor Turner, Deputy Commandant of the Marine Corps (Manpower and Reserve Affairs) (MMRP), and was referred to Christy Hicks, Deputy Commandant of the Marine Corps (Manpower and Reserve Affairs) (MMRP), who requested the Plaintiff email the BCNR decisional document, the Strobel letter, the separation rebuttal, and the statement to BCNR. The Plaintiff emailed the documents the same day. All other communication with Turner and Hicks went unanswered.

92. Getting nowhere with the Deputy Commandant of the Marine Corps (Manpower and Reserve Affairs), on March 28, 2024, the Plaintiff's counsel began making inquiries through the Commandant of the Marine Corps (SJA-JPL).[20]

93. The Commandant of the Marine Corps (SJA-JPL) authored the Advisory Opinion sent to the Board for Correction of Naval Records.

94. On March 28, 2024, the Plaintiff's counsel spoke to Major Joe Leonhardt, USMC, at SJA-JPL. Major Leonhardt indicated he would find an answer and asked for additional context. The Plaintiff's counsel sent an email to Major Leonhardt on March 28, 2024, with all relevant exhibits and requested:

    a. An answer to whether the Board for Correction of Naval Records directive was followed by the Commandant of the Marine Corps and Assistant Secretary of the Navy (Manpower and Reserve Affairs) and the result.

    b. A copy of the full Strobl memo, if it's more than one page.

---

[20] See n.19, *supra*.

      c.   A copy of what was sent to Assistant Secretary of the Navy (Manpower and Reserve Affairs), indicating digital was fine.

95. On April 26, 2024, Plaintiff's counsel asked for an update.

96. On April 29, 2024, the Branch Head for Commandant of the Marine Corps (SJA-JPL), Ms. Kathy Estes—a retired USMC Colonel Judge Advocate with decades of legal experience—responded that JPL is not the point of contact.

97. On April 29, 2024, Plaintiff's counsel responded by asking for the point of contact's name.

98. The plaintiff's counsel's April 29, 2024, request went unanswered.

## LAW

### Relevant Statutory and Regulatory Guidance Governing Involuntary Separation of Enlisted Members

99. No regular enlisted member of an armed force may be discharged before his term of service expires, except (1) as prescribed by the Secretary concerned; (2) by sentence of a general or special court-martial; or (3) as otherwise provided by law. 10 U.S.C.S. § 1169.

100.   Department of Defense Instruction 1332.14 governs administrative separations for enlisted personnel across all military branches. This instruction provides detailed criteria for characterizing service (e.g., honorable, general, or other than honorable), grounds for separation, and procedural protections.

101.   The Secretary of the Navy delegated authority to the Commandant of the Marine Corps and Chief of Naval Operations to implement Department of Defense Instruction 1332.14. Marine Corps Order 1900.16 governs the U.S. Marine Corps' administrative separation of enlisted personnel.

**Statutory and Regulatory Guidance Governing the Board for Correction of Naval Records**

102.    10 U.S.C. § 1552 provides for correcting errors in the record of a military member. Upon

timely application and consideration, the statute provides:

> The Secretary of a military department may correct any military
> record ... when the Secretary considers it necessary to correct an
> error or remove an injustice. Except as provided in paragraph (2),
> such corrections shall be made by the Secretary acting through
> boards of civilians of the executive part of the military department.

10 U.S.C. § 1552(a)(l).

103.    The Secretary of the Navy establishes the BCNR, which consists of civilians of the

executive part of the Department of the Navy appointed by the Secretary of the Navy; three

members constitute a quorum. 32 C.F.R. § 723.2(a). The BCNR will review all matters

properly before it to determine whether there is an error or injustice. 32 C.F.R. § 723.2(b).

104.    32 C.F.R. § 723.7(a) provides in pertinent part:

> If the Secretary's decision is to deny relief, such decision shall be in
> writing and, unless he or she expressly adopts in whole or in part the
> findings, conclusions and recommendations of the Board, or a
> minority report, shall include a brief statement of the grounds for
> denial. See § 723.3(e)(4).

105.    32 C.F.R. § 723.3(e)(4) provides in pertinent part:

> The brief statement of the grounds for denial shall include the
> reasons for the determination that relief should not be granted,
> including the applicant's claims of constitutional, statutory and/or
> regulatory violations that were rejected, together with all the
> essential facts upon which the denial is based, including, if
> applicable, factors required by regulation to be considered for
> determination of the character of and reason for discharge.

106.    The Secretary and the BCNR have "an abiding moral sanction to determine, insofar as

possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting

relief." Yee v. United States, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975) (citations omitted).

## LEGAL CLAIMS

**The Secretary of the Navy and the U.S. Marine Corps acted arbitrarily, capriciously, in bad faith, and contrary to applicable law or regulations.**

107.    The plaintiff challenges the ASB, the ASB's findings, and the Board for Correction of Naval Records' recommendation under the Administrative Procedure Act, 5 U.S.C. § 551, *et seq*. ("APA"). The APA provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . ." Brezler v. Mills, 86 F. Supp. 3d 208, 215 (E.D.N.Y. 2015) quoting 5 U.S.C. § 706(2)(B).

108.    The Plaintiff challenges the Secretary of the Navy's refusal to reconsider his decision, which was based on a separation record missing a transcript required by Regulation.

109.    The Plaintiff has exhausted his administrative remedies. He was discharged involuntarily after serving 18 years.  He petitioned the BCNR and was successful. The agency (Department of the Navy) refused to comply with the BCNR's edict.

**Count I**

**The actions of the Secretary of the Navy and U.S. Marine Corps personnel were arbitrary, capricious, an abuse of discretion, or otherwise not following the law when Marine Corps Order 1900.16 and Department of Defense Instruction 1332.14 were violated. This resulted in the Plaintiff's discharge and his service being characterized based on conduct from a previous enlistment.**

A. The government representatives were not duly appointed to serve as recorder or assistant recorder in the Plaintiff's ASB, violating MCO 1900.16.

110.    Marine Corps Order 1900.16, ¶ 6315.3. requires the ASB's convening authority to appoint the recorder/assistant recorder for an ASB and permits the appointing authority to be

delegated to three specific people: the cognizant staff judge advocate, legal services support section officer-in-charge, or law center director.

111.    Aside from the members, the convening authority did not appoint anyone. However, the convening authority did delegate authority to the legal services support section officer-in-charge to appoint "a recorder." The convening authority neither appointed an *assistant recorder* nor delegated the authority to appoint an *assistant recorder*.

112.    The Legal Services Support Section officer-in-charge did not appoint anyone. However, a member of the Legal Services Support Team, Miramar, appointed a recorder and assistant recorder.

113.    Violations of military regulations constitute a violation of the due process provisions of the Fifth Amendment.  *See, e.g., Antonuk v. United States,* 445 F.2d 592, 595 (6th Cir. 1971) ("violation by the military of its own regulations constitutes a violation of an individual's right to due process of law").

114.    Because the appointment of the recorder and assistant recorder violated Marine Corps Order 1900.16, it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

B. The assistant recorder appointed in violation of MCO 1900.16 ¶6315.3 also did not meet the minimal legal qualifications, further violating MCO 1900.16.

115.    The recorder and assistant recorder should be experienced officers and **shall be** a warrant or commissioned officer. *Id*. at ¶ 6315.a. Staff Noncommissioned Officers (like the Assistant Recorder in Plaintiff's ASB) may be appointed to act as recorder **upon approval by the convening authority's cognizant Staff Judge Advocate**. *Id*.[21]

---

[21] See note 15, *supra*.

116.    To appear as a recorder for an ASB where sexual misconduct is alleged (as it was here),
the recorder and/or the assistant recorder must be a certified judge advocate within the
meaning of the Manual for Courts- Article 27(b), UCMJ. If available, the recorder/assistant
recorder should be Special Victim Investigations and Prosecutions qualified. *Id*. at ¶
6315.3.a.

117.    The convening authority did not appoint a Recorder or Assistant Recorder. However, the
convening authority delegated authority to the legal services support section officer-in-charge
to appoint "a recorder." The convening authority neither appointed an *assistant recorder* nor
delegated the authority to appoint an *assistant recorder*.

118.    The assistant recorder was also unqualified to serve in an ASB, alleging a violation of
Article 120(c), UCMJ, because he was not a lawyer and, therefore, could not be certified in
accordance with Article 27(b), UCMJ, as required by MCO 1900.16 ¶ 6315.3.a.

119.    Violations of military regulations constitute a violation of the due process provisions of
the Fifth Amendment.  *See, e.g., Antonuk v. United States,* 445 F.2d 592, 595 (6th Cir.
1971) ("violation by the military of its own regulations constitutes a violation of an
individual's right to due process of law").

120.    Because the assistant recorder was unauthorized and unqualified, his appointment
violated Marine Corps Order 1900.16; it was arbitrary, capricious, an abuse of discretion, or
otherwise not in accordance with the law.

C. While the Secretary of the Navy did not receive the required *Record of Proceedings*
to decide whether to discharge the Plaintiff, the latter created
*Record of Proceedings* violates MCO 1900.16.

121.    After the ASB retained the Plaintiff on active duty, the Commanding General forwarded

the Board's report to the Secretary of the Navy recommending that Plaintiff be discharged–

irrespective of the ASB's decision.

122.    The Commanding General failed to include the required and materially significant

*Record of Proceedings* with the Board's Report. Once the Plaintiff's counsel pointed out this

failure, the Commanding General ordered that the *Record of Proceedings* be created.

123.    The *Record of Proceedings* **must be** authenticated by the signatures of the President

(foreperson) *and* the recorder *or*, in the absence of either or both, by a member in lieu of the

President *or* by a member in lieu of the recorder. Marine Corps Order 1900.16, ¶ 6320.

124.    The President authenticated the *Record of Proceedings*, but the recorder did not. In the

recorder's absence, an ASB member is the only person who can sign in place of the recorder.

125.    The other person who signed was the improperly appointed and unqualified assistant

recorder – who also happened to be the one who created the *Record of Proceedings*.

    a.    Further, the *Assistant* Recorder signed as the *Recorder*.    This was false.

126.    Violations of military regulations constitute a violation of the due process provisions of

the Fifth Amendment.    *See, e.g., Antonuk v. United States,* 445 F.2d 592, 595 (6th Cir.

1971) ("violation by the military of its own regulations constitutes a violation of an

individual's right to due process of law").

127.    Because the required authentication of the *Record of Proceedings* violated Marine Corps

Order 1900.16, the action is arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with the law.

## Count II

**The Secretary of the Navy's actions were arbitrary, capricious, an abuse of
discretion, or otherwise not following the law when the Secretary of the Navy**

**violated Marine Corps Order 1900.14 and Department of Defense**
**Instruction 1332.14 by discharging the Plaintiff on an incomplete record.**
.

128.    The averments of the preceding paragraphs are incorporated by reference as if fully set

forth herein.

129.    When the Commanding General initially forwarded Plaintiff's discharge paperwork to

the Secretary of the Navy, it was missing the *Record of Proceedings (summarized transcript)*

as required by MCO 1900.16 ¶ 6320.

130.    It was an obvious requirement because enclosure (1) to the Administrative Discharge

Board Report is "Record of Board hearing," and it was not enclosed.

131.    Because the Secretary decided on the Administrative Discharge Board Report without the

required Record of Proceedings in violation of MCO 1900.16, it is arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with the law.

132.    The Secretary further abused his discretion when the deficiency was pointed out to him,

and he refused to reconsider his decision – even though a (defective) *Record of Proceedings*

was prepared for that purpose.

133.    Violations of military regulations constitute a violation of the due process provisions of

the Fifth Amendment.  *See, e.g., Antonuk v. United States,* 445 F.2d 592, 595 (6th Cir.

1971) ("violation by the military of its own regulations constitutes a violation of an

individual's right to due process of law").

134.    The failure to address any of these points, which were meritorious arguments raised

by the Plaintiff, was arbitrary and capricious.    *Mudd v. Caldera,* 26 F.Supp.2d 113,

120-21 (D.D.C. 1998) (citing with approval *Frizelle v. Slater,* 111 F.3d 172, 176 (D.C. Cir.

1997), and *Neal v. Secretary of Navy,* 639 F.2d 1029, 1042 n.13 (3d Cir. 1981).

135.    These actions were arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with the law.

### Count III

**The Secretary of the Navy's actions were arbitrary, capricious, an abuse of discretion, or otherwise not following the law when the Secretary of the Navy violated Marine Corps Order 1900.14 and Department of Defense Instruction 1332.14 by characterizing the Plaintiff's discharge from conduct occurring in a previous period of enlistment.**

136.    The latest date of any misconduct allegation by the Plaintiff was April 20, 2018.

137.    The preliminary inquiry and subsequent command investigation into the allegations were

completed on September 13, 2018, and November 8, 2018, respectively.

138.    Endorsements to the command investigation were signed on December 4, 2018, by the

Plaintiff's Squadron Commanding Officer and on January 31, 2019, by the Plaintiff's Group

Commanding Officer, demonstrating the Plaintiff's command was aware of the allegations

when he reenlisted.

139.    On September 27, 2019, the Plaintiff reenlisted in the USMC without restriction or

reservation.

140.    On his re-enlistment date, the Plaintiff did or should have received a Navy-Marine Corps

(NAVMC) form 8064 – Certificate of Reenlistment and a Department of Defense (DD) Form

256 MC – Honorable Discharge Certificate. Marine Corps Order 1040.31, ch. 6, ¶¶ 5 and 6.

141.    The ASB convened and adjourned on June 29, 2020, substantiating only one allegation

that occurred on or before April 20, 2018.

142.    The ASB did not recommend a particular characterization of service because it voted to

retain the Plaintiff, given his potential for future service and rehabilitative potential.[22]

143.    The Commanding General approved the findings that one allegation was substantiated

and three were not substantiated, writing: "[t]he Administrative Separation Board convened

on 29 July 2020 [sic] and determined a preponderance of the evidence proved 1 of 3 [sic] of

the allegations forming the basis for which he was notified and recommended that the

respondent be retained in the United States Marine Corps. I approve the board's findings. I

disapprove the recommendation." The Commanding General recommended a General (under

honorable conditions discharge) because of those findings.

144.    In his February 1, 2020, letter, ASN(MRA) stated he carefully reviewed the

Commanding General's letter and, based on that letter, directed the Plaintiff's separation with

a discharge characterization of General (Under Honorable Conditions) for the commission of

a serious offense.[23]

145.    Marine Corps Order 1900.16, para 1004.a(1) provides:

> Characterization of the *current enlistment or period of service* is
> *determined by conduct, actions, or performance during that*
> *enlistment* or service plus any extensions prescribed by law or
> regulations or effected with the consent of the Marine. Thus,
> positive or negative *conduct, acts, or performance during a period*
> *of prior military service*--including court-martial, nonjudicial
> punishment, absence without leave, misconduct for which a
> reenlistment waiver was granted, or *commission of other offenses*
> *for which punishment was not imposed or adjudged--cannot be*
> *considered in determining the characterization to be recommended*
> *for the current enlistment.* (Note: 6105 counseling entries from
> previous enlistments carry over and remain valid in current

---

[22] Unless separation is mandatory, the potential for rehabilitation and further useful service shall be considered by the separation authority and, where applicable, the administrative board. MCO 1900.16, para 6310.1(a)(2).

[23] The Commission of a Serious Offense was based on the 2018 allegation of violating Article 120c substantiated by the board.

enlistment.) The issuance of a DD Form 214 to a Marine of the
Selected Marine Corps Reserve (SMCR) or Individual Ready
Reserve (IRR) after any period of active duty is used in
determining characterization of separation from the Reserve
component.

MCO 1900.16, ¶ 1004a.(1) (emphasis added)

146.    Department of Defense Instruction 1332.14, ¶ 4.3(b)(3) states: "Except as otherwise

provided in Paragraph 4.3., characterization will be determined solely by the enlisted Service

member's military record during the current enlistment or period of service to which the

separation pertains, plus any extensions to that period prescribed by law or regulation or

effected with the consent of the enlisted Service member.

147.    Department of Defense Instruction 1332.14, ¶ 4.3(b)(3).a. states:

Previous service activities, including records of conviction by
court-martial, records of absence without leave, or commission of
other offenses for which punishment was not imposed will not be
considered on the issue of characterization. To the extent that such
matters are considered on the issue of retention or separation in
accordance with Paragraph 4.1.b., the record of proceedings may
reflect express direction that such information will not be
considered on the issue of characterization.

148.    All allegations leading to the processing of the Plaintiff for administrative separation

occurred during a prior enlistment, i.e., during previous service.

149.    The Plaintiff's final period of military service, i.e. the ***current enlistment***, was from

September 27, 2019, through May 31, 2021.[24]

150.    During the ***current enlistment*** characterized by ASN(MRA) (as recommended by

Commanding General as advised by his staff judge advocate) of September 27, 2019,

through May 31, 2021, the Plaintiff was never alleged to have engaged in any adverse

---

[24] May 31, 2021 is the date the Secretary of the Navy discharged the Plaintiff, his orginal
discharge date was September 16, 2023 – the day he would have retired.

conduct, acts, or performance--including court-martial, nonjudicial punishment, absence

without leave, misconduct for which a reenlistment waiver was granted, or commission of

other offenses for which punishment was not imposed or adjudged.

151.    During the ***current enlistment***, the Plaintiff's performance appraisals (Fitness Reports)

do not indicate any negative conduct, acts, or performance. However, one performance

appraisal does comment on the 2018 conduct from a prior enlistment substantiated by the

ASB, and at least one performance appraisal is marked for commendatory material being

received by the Plaintiff.

152.    The Plaintiff's ***current enlistment*** is void of any negative conduct, acts, or performance

*and* the ASN(MRA)'s sole rationale for characterizing the Plaintiff's ***current enlistment***

(September 27, 2019, through May 31, 2021) as General (under honorable conditions) vice

Honorable occurred during a prior enlistment – which cannot be considered in determining

the characterization to be recommended for the current enlistment.

153.    Under the arbitrary and capricious standard of review, the court would be required to find

that the Agency decision minimally contains a rational connection between the facts found

and the choice made. *Levant v. Roche*, 384 F. Supp. 2d 262, 268 (D.D.C. 2005) (internal

citations omitted).

154.    The entire endorsement chain all recommended ASN(MRA) discharge Plaintiff with a

General (under honorable conditions) characterization for conduct alleged to have occurred

in 2018, i.e., in a previous period of service.

155.    No rationale was given for characterization of the Plaintiff's ***current enlistment*** as

General (under honorable conditions) that occurred during the current enlistment. All the

rationale given for degrading the Plaintiff's **_current enlistment_** allegedly occurred in a previous service period and was known at the time of the reenlistment.

156.    The characterization of General (under honorable conditions) is without basis in the current period of service and violates MCO 1900.16, ¶ 1004a.(1) and DODI 1332.14, ¶ 4.3(b)(3).a.

157.    Based upon the above, the ASN(MRA)'s decision to discharge the Plaintiff and characterize the discharge as General (under honorable conditions) was arbitrary and capricious.

### COUNT IV

**The ASN(M&RA) and U.S. Marine Corps acted in bad faith and an arbitrary and capricious manner after Board for Correction of Naval Records directed the Marine Corps assemble and forward Petitioner's complete separation package, to include the full transcript of the ASB proceeding, to the ASN (M&RA) for review of separation and character of service determination and the direction was summarily ignored.**

158.    The Board for Correction of Naval Records found favorably, in part, for the Plaintiff on June 14, 2022, deciding that his post-board administrative separation process was defective due to the failure to include a summarized transcript for CMC(MRA) and ASN(MRA) for consideration as required by MCO 1900.16, para. 6320. *See* Letter from Chairman, Board for Correction of Naval Records to Secretary of the Navy (June 14, 2022) (on file with BCNR at SEA Docket NO: 6385-21 6/14/2022). The board arbitrarily reserved the other issues presented.

159.    In the published decisional document, BCNR "concluded that [Plaintiff]'s complete separation package *shall be assembled and forwarded by the Marine Corps*, in compliance with [MCO 1900.16 w/CH2 (MARCORSEPMAN)], to the ASN (M&RA) for review and

determination if Petitioner's involuntary separation and assigned characterization of service should be modified. *Id.*

160.    On June 14, 2022, the Secretary of the Navy's designated representative reviewed the Board proceedings and approved the recommendation for corrective action as set forth in the BCNR Decisional Document and transmitted the letter to [Deputy Commandant of the Marine Corps (Manpower and Reserve Affairs)]. *See* Letter from Chairman, Board for Correction of Naval Records to Commandant of the Marine Corps (June 14, 2022) (on file with BCNR at SEA Docket NO: 6385-21 6/14/2022).

161.    On around September 19, 2022, the Acting Deputy Commandant of the Marine Corps (Manpower and Reserve Affairs) informally signed a one-page memo to Assistant Secretary of the Navy (Manpower and Reserve Affairs) recommending he uphold the previous decision; however, the letter makes no mention of what documents were to be attached, e.g., BCNR's June 14, 2022, decision; or the transcript. *See* Action Memo from SES Michael Strobl, Deputy CMC(MRA), Acting, for ASN(MRA) (19 Sep 22).[25]

    a.    The subject of the letter is: Readdress request for Administrative Separation of Mr. Christopher B. Jackson (formerly Gunnery Sergeant) [xxxxxxxxxx]/729l USMC.

162.    After tracking down the BCNR decisional document and being referred to Commandant of the Marine Corps (MRA-MMRP) and several calls and emails, on May 16, 2023, Plaintiff was informed by Commandant of the Marine Corps (MRA-MMRP-13) that more information was requested about the Strobl letter, *supra.*, and Commandant of the Marine

---

[25] The letter received by the plaintiff is one page, but it reads like it should be more. The one-page total was verified by Ms. S. Jackson at CMC(MRA-MMRP13) on May 15, 2023, at 1:15 pm by email.

Corps (MRA-MMRP-13) was "hopeful a response might advise the way forward on this case. If nothing else is provided, BCNR would have to direct the way forward- if any."[26]

163.    From that point on, the Plaintiff, through counsel, sought confirmation from the Office of the Deputy Commandant of the Marine Corps (Manpower and Reserve Affairs) and the Commandant of the Marine Corps (SJA-JPL) that the direction of the Board for Correction of Naval Records had been executed – to no avail. Each inquiry was rebuffed until the final inquiry to an SES lawyer was ignored, forcing this filing.

164.    While the Secretary of Navy is authorized to overrule Board for Correction of Naval Records decision, he must act on either explicitly stated policy reasons or upon evidence presented in record made to Board; Secretary's decision is then final and conclusive, unless upon judicial review it is found to be arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to applicable law or regulations. *Kolesa v. Lehman*, 597 F. Supp. 463, 1984 U.S. Dist. LEXIS 21854 (N.D.N.Y. 1984).

165.    Here, the Secretary took no action because the U.S. Marine Corps did not take action to fulfill the direction of the Board for Correction of Naval Records or he again refused without rationale. However, the actions of the Commandant of the Marine Corps Staff and the Staff Judge Advocate to the Commandant of the Marine Corps offices were arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to applicable law or regulations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

---

[26] The MMRP-13 representative was S. Jackson: Manpower Management Records and Performance Branch 13 (MMRP-13) Performance Evaluation Review/Conressionals [sic] Modification Records Correspondence Unit

(1) Reverse the decision of the Secretary of the Navy to discharge the Plaintiff.

(2) Order the Secretary of the Navy to give the plaintiff constructive credit from the date discharged through the end of his final enlistment and retire him honorably as his record merits and to correct Plaintiff's records to show that he was not discharged but continued to serve until eligible for retirement;

(3) Order the Secretary of the Navy to award the Plaintiff any other relief and benefits to which he is entitled had the Department of the Navy complied with the relevant law;

(4) Award Plaintiff attorneys' fees and costs expended in pursuit of this claim, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(5) Grant any other relief that the Court deems just and proper.

166.


Dated: September 19, 2025

/s/ Phillip Stackhouse
Phillip Stackhouse
DC State Bar #: 993508
Stackhouse Law Firm, Ltd.
4660 La Jolla Village Drive, Suite 100
San Diego, CA 92122
Telephone: (760) 284-3400
Facsimile: (760) 932-4100
E-mail: stackhouse@militarydefender.com
Counsel for the Defendant

CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the Clerk of Court and that all counsel of record received notice.

Dated: September 19, 2025

By:

/s/ Phillip Stackhouse
Phillip Stackhouse
DC Bar #: 993508
Stackhouse Law Firm, Ltd.
4660 La Jolla Village Drive, Suite 100
San Diego, CA 92122
Telephone: (760) 284-3400
Facsimile: (760) 932-4100
E-mail: stackhouse@militarydefender.com
Counsel for the Plaintiff